IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 04 AUG -9 AM 11: 25 |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 03-1613 RB |
| ) | |
| LUCIANA MARQUEZ, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Judgment of Acquittal (Doc. No. 127), filed on July 3, 2004. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is not well-taken and should be denied.

**I. Background**

Defendant Luciana Marquez (hereinafter "Ms. Marquez") was indicted for (1) Harboring an Illegal Alien, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 1324(a)(1)(A)(v)(II), and (2) Conspiracy to Harbor an Illegal Alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). (Doc. No. 105). On June 30, 2004, the jury returned a guilty verdict on both counts. (Doc. No. 124). Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Ms. Marquez seeks a judgment of acquittal on the grounds that the guilty verdict was against the weight of the evidence.

**II. Facts**

The evidence presented at trial in support of the jury verdict, viewed in the light most favorable to the Government, revealed the following facts. On May 20, 2003, at approximately 9:00 p.m., after providing several suspicious statements to the investigating officers, Amy Garcia (hereinafter "Ms. Garcia") was detained at a DWI/seatbelt enforcement checkpoint conducted by

133.

the Luna County Sheriff's Department. Gov.'s Resp. to Def. Mot. for J. of Acquittal 1-2; Docket No. 130. After eventually confessing to her involvement in an illegal alien smuggling scheme, she was transported to the Deming, New Mexico Border Patrol Station. *Id.* at 2, 6. At the station, Border Patrol Agents Jose Gardea and John Martinez were assigned to investigate the incident. *Id.* at 1.

During their investigation, Agent Martinez and Agent Gardea interviewed Ms. Garcia. *Id.* at 2. Ms. Garcia voluntarily agreed to assist the agents in their investigation. *Id.* Ms. Garcia explained that she had agreed to help her friend, Javier Salinas-Lopez, bring six of his relatives from Mexico into the United States illegally. *Id.* In order to accomplish this, Ms. Garcia was to travel to Mexico, locate the six aliens, and make arrangements to have them transported into the United States. *Id.* at 2-8. As the plan unfolded, Ms. Garcia arranged to have the six aliens walk across the Mexican Border and into the United States. *Id.* at 4. Once inside the United States, the six aliens congregated in an apartment rented by Miguel Marquez and his wife, Norma Juarez. *Id.* at 5. Afterwards, the aliens were loaded into two vehicles where they proceeded towards Deming, New Mexico. *Id.* A third vehicle, driven by Miguel Marquez, accompanied the entourage. *Id.* The three vehicles were on their way to an apartment located in Deming, New Mexico when Ms. Garcia was detained at the checkpoint. *Id.* Ms. Marquez, Miguel Marquez's mother, was the tenant at the Deming apartment. *Id.* at 11.

To verify Ms. Garcia's information, Border Patrol agents traveled to the apartment located in Deming, New Mexico. *Id.* at 7. After the agents knocked and Ms. Marquez answered, the Border Patrol agents informed her they were investigating a report of undocumented aliens at her residence. *Id.* Slightly closing the apartment door to prevent the agents from peering into her apartment, Ms. Marquez told the agents she was all alone. *Id.* However, Border Patrol

Agent Jose Gardea informed her he had seen four people inside her apartment. *Id.* At this point, Ms. Marquez conceded there were, indeed, four people inside her apartment, but she claimed she was unaware of their identities. *Id.* She claimed they had come to her home that night and had asked her if they could spend the night. *Id.* After receiving consent, Agent Gardea entered her residence and ascertained that the four persons had entered the United States illegally. *Id.* He also discovered Ms. Marquez's daughter, Alondra Marquez-Cuevas, who was also in the United States illegally. *Id.* at 7-8.

After waiving her *Miranda* rights, Ms. Marquez admitted she was aware the aliens in her apartment were in the country illegally. *Id.* at 8. Her daughter, Alondra Marquez-Cuevas also admitted having knowledge of the aliens' illegal status. *Id.* Alondra Marquez-Cuevas also admitted her brother, Miguel Marquez, was previously involved in an alien smuggling operation. *Id.*

### III. Standard of Review

In considering a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the Court must "view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. Johnson*, 12 F.3d 1540, 1545 (10th Cir. 1993) (citing *United States v. White*, 673 F.2d 299, 301-302 (10th Cir. 1982)). A district court must give the benefit of the doubt to the Government, "and assume the jury found its evidence, both direct and circumstantial, to be credible." *United States v. Chavez-Palacios*, 30 F.3d 1290, 1294 (10th Cir. 1994). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts."

*United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998). However, "the evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt," and a district court "may not uphold a conviction by piling inference upon inference." *Id.*

## IV. Discussion

Title 8, United States Code, Section 1324(a)(1)(A)(iii), makes it a crime for anyone to harbor an alien, knowing or in reckless disregard of the fact that the alien has entered or remained in the United States in violation of the law. At trial, the Government was required to prove that: (1) the alien entered or remained in the United States in violation of the law; (2) Ms. Marquez harbored the alien within the United States; (3) Ms. Marquez either knew or acted in reckless disregard of the fact that the alien entered or remained in the United States in violation of law; and (4) Ms. Marquez's conduct tended to substantially facilitate the alien remaining in the United States illegally. *See* Court's Jury Instructions, No. 16; Doc. No. 123.

Construing the evidence in the light most favorable to the Government, the Court finds the Government presented sufficient evidence to allow the jury to conclude that Ms. Marquez harbored an alien with knowledge that the alien had entered or remained in the United States in violation of the law. At trial, the evidence showed that Ms. Marquez harbored four illegal aliens in her apartment for approximately four hours. Gov.'s Resp. to Def. Mot. for J. of Acquittal 11; Doc. No. 130. The jury also heard testimony that Border Patrol agents uncovered a large quantity of food in Ms. Marquez's apartment, *id.* at 12., and that she initially lied to the Border Patrol agents by claiming she was the only person in her apartment. *Id.* at 7. Significantly, the evidence demonstrated that Ms. Marquez eventually admitted knowing that the aliens in her apartment were in the United States illegally. *Id.* at 8. Accordingly, there was sufficient evidence to support Ms. Marquez's conviction of the charge of harboring an illegal alien.

4

With regard to conspiracy, Title 8, United States Code, Section 1324(a)(1)(A)(v)(I), makes it a crime for anyone to conspire to knowingly harbor an illegal alien. At trial, the Government was required to prove that: (1) Ms. Marquez and at least one other person made an agreement to commit the crime of harboring an illegal alien; (2) Ms. Marquez knew the unlawful purpose of the agreement and joined in it willfully; that is, with the intent to further the unlawful purpose; and (3) that one of the conspirators, during the existence of the conspiracy, knowingly committed at least one overt act in order to accomplish some object or purpose of the conspiracy. *See* Court's Jury Instructions, No. 12; Doc. No. 123. "Casual transactions with persons involved in a conspiracy are insufficient to establish" that the defendant was a member of the conspiracy. *United States v. Powell*, 982 F.2d 1422, 1429 (10th Cir. 1992). A defendant's connection with the conspiracy, however, need only be minimal so long as the Government can show that the defendant was a knowing participant. *See id.* As a knowing participant, though, defendant's actions must have constituted an "essential and integral" step towards the common, illegal goal. *See United States v. Edwards*, 69 F.3d 419, 432 (10th Cir. 1995).

The Court finds that the Government presented sufficient evidence for the jury to infer that Ms. Marquez conspired to harbor an illegal alien. First, the evidence established that there were two telephone calls made to Ms. Marquez's apartment on May 20, 2003. Gov.'s Resp. to Def. Mot. for J. of Acquittal 11-12; Doc. No. 130. The first telephone call came from Norma Juarez (hereinafter "Ms. Juarez"), who was in Columbus, New Mexico with six illegal aliens. *Id.* During that telephone call, Ms. Juarez spoke with Ms. Marquez's daughter, Alondra Marquez-Cuevas, asking her for the location of co-conspirator, Miguel Marquez. *Id.* at 12. Ms. Juarez

5

also told Alondra Marquez-Cuevas that their alien smuggling scheme had to be accelerated because co-conspirator, Ms. Garcia, had to return to Colorado. *Id.* The jury could have inferred that Ms. Marquez was present during this telephone call, conspiring with Alondra Marquez-Cuevas with regard to the arrival of the aliens.

The second telephone call to Ms. Marquez's apartment was made by Agent Gardea. Def. Mot. for J. of Acquittal 12; Doc. No. 130. In his conversation with Alondra Marquez-Cuevas, Agent Gardea verified that she was anticipating the arrival of the aliens. *Id.* The evidence showed that Ms. Marquez was present during this second telephone call and did not object to the illegal scheme. *Id.* The jury could have inferred that this second telephone call indicated that Alondra Marquez-Cuevas, as well as Ms. Marquez, had reached an agreement to have the aliens stay at Ms. Marquez's apartment.

## V. Conclusion

Ms. Marquez's motion for judgment of acquittal should be denied. The evidence adduced at trial by the Government provided the jury an adequate factual basis to conclude that Ms. Marquez knowingly harbored an illegal alien. Additionally, the Government gave the jury sufficient evidence from which it could infer that Ms. Marquez was a knowing and voluntary member of a conspiracy to harbor an illegal alien.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Judgment of Acquittal (Doc. No. 127), filed on July 3, 2004, is hereby **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**